RANDOLPH TERRY AND WILLOW L. TERRY v. JIM WALTER CORPORATION

No. 7010DC348

(Filed 15 July 1970)

1. Trespass § 8—  building of shell home on plaintiffs' lot — damages
   — instructions

   In this action to recover damages for trespass to land by construction of a shell home on plaintiffs' lot, the trial court failed to declare and explain the law arising on the evidence when it instructed the jury that the measure of damages is the reasonable cost of the removal of the house plus the difference between the fair market value of the property immediately before the trespass and immediately after the house is removed, and that the jury had heard the evidence and should allow plaintiffs what it found to be the reasonable cost of removal, evidence having been introduced by plaintiff of the cost of removing the house intact and by plaintiff and defendant of the cost of destroying the house and clear-

ing the debris, and it being incumbent upon the court to instruct the jury that plaintiffs were not entitled to have the house removed intact but simply to have it removed and the debris cleaned up.

**2. Trespass § 4—    building of house on plaintiffs' lot — election of plaintiffs**

   Where a house was wrongfully constructed on plaintiffs' land by a defendant which is not a public authority or clothed with any right of eminent domain, plaintiffs can elect either to keep the house on their lot or demand that defendant remove it and seek damages for the wrongful trespass.

APPEAL by defendant from *Barnette, District Judge,* December 1969 Session of the General Court of Justice of WAKE County, District Court Division.

The plaintiffs, in October 1958, lived in Wake County, North Carolina, and, at that time, purchased Lot No. 6 of Appleton Acres as shown on Map Book 1959 at Page 78 in the Wake County Public Registry. They recorded the deed to their lot. At the time they purchased their lot, there were no trees or vegetation on the lot. The lot was located on an unimproved, dirt street and had a frontage of 100 feet and a depth of 262 feet. The plaintiffs planted pine trees on their lot shortly after having purchased it with the intention of later building a home there.

In 1959 the plaintiffs moved to Florida, where they still live. They return to Wake County, North Carolina, from time to time and go by to see their lot. In 1967 on a trip from Florida to Wake County, North Carolina, they visited their lot and found a house located thereon. This house was occupied by Jesse Earl Tillery and family (Tillery). The plaintiffs observed that numerous pine trees on their lot had been cut. The house was located about 80 feet from the street and in approximately the center of the lot. The plaintiffs had paid between $800 and $1,000 for their lot. They had recently agreed with a relative to a sale of the lot for the sum of $3,000; but when the purchaser found the house located on the lot, he refused to go through with the purchase.

The plaintiffs instituted this action for wrongful trespass and damage to their lot and prayed judgment in the amount of $4,500.

The plaintiffs offered Tillery as a witness. Tillery testified that in 1966 he had entered into a contract to purchase Lot. No. 7 of Appleton Acres Subdivision. Before he completed his payments for the lot and procured a deed thereto, he and his wife entered into a contract with the defendant to construct a so-called shell house on the lot. His testimony was as follows:

"At the time I contacted Jim Walter's agent, Mr. Mitchell, I was buying this lot from Mr. Drake, was in the process of buying this lot when I got in touch with him. I made arrangements to buy the lot myself. I had paid part of it before I built the house on it. I had paid Mr. Drake some of the money already. My lot adjoins the Terry lot, that is, the one that we have been talking about that is owned by Mr. Terry. I guess it is the same size as my lot, about the same size I would say. It has the same kind of subsoil. It is on the same street. It has neither water nor sewer. The purchase price of my lot was $1,-000.00. I agreed to pay Mr. Drake $1,000.00 for it. I had not started doing any work on my lot before I contacted Mr. Mitchell. I had done nothing. I had not cut any trees before I contacted Mr. Mitchell. Mr. Mitchell went out on the lot with me to locate the house on the lot. I told him where my lot was; where I thought it was, anyway. In other words, I showed Mr. Mitchell where I thought my lot was. He put the house where I thought my lot was. I showed him the place where to put it, and that is where he built it. I don't know the exact time that Jim Walters remained on the job site. It was the last of March when they got through. They got out sometime in March, 1967. I moved in right after they got out. It was about the last of March when I moved in. I have been living there ever since. I have a good relationship with Jim Walters. I cut some of the trees down around my house. I cut the ones down from the road and just a few where they built the house. I have a lavatory built back of my house and I build *(sic)* a little shelter there. I did this myself. I cut the trees down there myself. There is a house on the lot which I own directly below me. I do own a 100 feet of lot on this road. I own Lot 7 which is the adjoining lot to where I live. The Farleys live in the house on Lot 7. There are about four houses on the road now leading from Evans Road down to the back. All the houses are on the right as you turn off Evans Road. There are no houses on the left of the road as you come down from Evans Road. This is a dead-end street. I have not seen anyone keeping up the road that leads from Evans Road down to my house. It is not kept up. . . ."

The evidence discloses that the plaintiffs own Lot 6 in the subdivision and that the Tillerys own Lot 7. The Tillerys prepared Lot 6 for erection of a house thereon by the defendant. The Tillerys cut the trees and selected the location for the house put thereon by the defendant. It also appears that on the adjacent Lot No. 7, which is

actually owned by the Tillerys, there is now located a brick house, occupied by the Farleys.

The plaintiffs offered other evidence as to the costs of moving the house on Lot 6. There was evidence on behalf of the plaintiffs that it would cost in the neighborhood of $2,100 to move the house intact. This evidence as to cost of moving the house intact included such items as improving the road in front of the house in order to get the necessary equipment to the house site and so the house could be removed safely; constructing an access way for the equipment and the house to be moved; relocating the house on another lot; and damage to trees. The plaintiffs also offered evidence that the value of the lot without the house on it was $2,750.

The trial judge submitted two issues to the jury as follows:

"1. Did defendant trespass upon the lands of plaintiffs, as alleged in the complaint?

2. In what amount, if any, were plaintiffs damaged by the trespass of defendant?"

The trial judge instructed the jury peremptorily to answer the first issue "Yes." The second issue was answered by the jury in the amount of $3,125.00. The trial judge stated that in his opinion the verdict was excessive and against the weight of the evidence, and he would allow a motion of the defendant to set the verdict aside and for a new trial, unless the plaintiff filed a remittitur and consented to a reduction of the verdict to $2,200. The plaintiffs filed such a remittitur, and the judge thereupon signed a judgment in favor of the plaintiffs against the defendant in the amount of $2,200. From the entry of this judgment the defendant appealed.

*Emanuel and Emanuel by W. Hugh Thompson for plaintiff appellees.*

*Booth, Fish and Adams by Roy M. Booth and H. Marshall Simpson for defendant appellant.*

CAMPBELL, J.

At the outset it is noted that the appellant failed to comply with the rules of this Court in that the brief does not "contain, properly numbered, the several grounds of exception and assignment of error with reference to the pages of the record, and the authorities relied on classified under such assignment." Rule 28.

**[1]** The defendant assigns as error the charge of the trial court on the second issue as to the measure of damages.

The trial court instructed the jury as follows:

"The measure of damages in this case is first the reasonable cost of the removal of the house plus the difference between the fair market value of the property immediately before the trespass and the fair market value of the property immediately after the house is removed.

As to the reasonable cost of removal of the house, I do not think that needs any further explanation. You have heard the evidence as to that. You are to allow the plaintiffs what you find to be the reasonable cost of removal."

The trial judge committed error in this instruction. Rule 51 of the Rules of Civil Procedure which became effective January 1, 1970, prior to the trial of this case, provides that the judge "shall declare and explain the law arising on the evidence given in the case." This requirement is a continuation of the requirement previously contained in G.S. 1-180.

"It is the duty of the trial court to declare and explain the law arising on the evidence as to all substantial features of the case, without any special prayer for instructions to that effect, and a mere declaration of the law in general terms and a statement of the contentions of the parties is insufficient. . . ." *Therrell v. Freeman*, 256 N.C. 552, 124 S.E. 2d 522 (1962).

The vice of the instruction in the instant case is clearly shown by the answer of the jury to this issue. While the plaintiffs in case of a wrongful trespass by the defendant were entitled to have their land restored to its previous condition before the trespass, nevertheless, they had offered evidence showing what it would cost to move the house and keep the house intact. The plaintiffs' evidence tended to show that this would cost in the neighborhood of $2,100.00 because of the necessary preparation that would have to be undertaken. The plaintiffs' evidence further showed that the house could simply be destroyed and the debris cleaned up at a cost not exceeding $500.00, and the defendant had offered evidence that this could be done at a cost of $250.00. It was incumbent upon the trial judge to explain these various factors to the jury and to explain to the jury that the plaintiffs were not entitled to have the house removed intact, but simply to have it removed from the premises and any debris cleaned up. The court further instructed the jury that in determining the difference between the fair market value of the prop-

erty immediately before the trespass and the fair market value of the property immediately after the house is removed the jury could take into consideration "the evidence concerning the cost of replacing any trees that were cut down." There was no evidence introduced that the defendant had cut down any trees. The testimony of the plaintiffs' witness Tillery was to the effect that Tillery had done the cutting of the trees. There was no evidence that Tillery was an agent of the defendant; but on the contrary, Tillery cut the trees down in order to prepare for the location of the house he was having the defendant erect and which house Tillery bought and is still occupying.

The trial judge further instructed the jury that in answering the second issue, the jury might award the plaintiffs an amount of money and that "the amount may be anywhere from one cent to $4500 which is the figure prayed for by the plaintiffs in their prayer for relief in the complaint, or the amount may be anywhere in between these figures." The plaintiffs did not offer evidence which would substantiate any such damages. The plaintiffs' evidence shows $500 to remove house and clear up debris and $250 for loss in value of the lot.

[2]    It is to be noted that since the defendant is not a public authority or clothed with any right of eminent domain, the plaintiffs, as the landowners, could elect either to keep the house on their lot or demand that the defendant remove it and seek damages for the wrongful trespass. *Leigh v. Mfg. Co.*, 132 N.C. 167, 43 S.E. 632 (1903).

For an interesting article pertaining to remedies for trespass to land, see the article by Professor Dobbs, 47 N.C.L. Rev., 334, et seq. Likewise see *Homes, Inc. v. Holt*, 266 N.C. 467, 146 S.E. 2d 434 (1966), where a shell home was placed on the wrong lot and the landowner refused to permit the construction company to remove the home, and the construction company brought an action for unjust enrichment.

In the instant case the landowner elected not to keep the home, but instead sought damages for the wrongful trespass.

Since there must be a new trial, we refrain from further discussion as the same evidence and questions of law may not be presented on the second trial.

New trial.

PARKER and VAUGHN, JJ., concur.