STEEL CREEK DEVELOPMENT CORPORATION, PLAINTIFF, AND R. S. SMITH AND WIFE, EVELYN L. SMITH, ADDITIONAL PARTY PLAINTIFFS v. EARL TERRY JAMES AND MARTHA S. JAMES, D/B/A TERRY'S MARINA, DEFENDANTS

No. 8126SC725

(Filed 3 August 1982)

1. Appeal and Error § 68— former appeal—law of the case

The decision of the Supreme Court on a prior appeal of a trespass action establishing that plaintiffs owned the submerged land on which defendants at one time affixed their boathouses became the law of the case on that issue.

2. Waters and Water Courses § 5— navigable waters—insufficient evidence for determination

Evidence that a lake was used for recreational boating and that small seaplanes had occasionally landed on its surface was insufficient for a deter-

mination as to whether the lake had the capacity to support "trade and travel in the usual and ordinary mode" and was thus a navigable body of water.

**3. Waters and Water Courses § 3— ownership of submerged land—right to proscribe fixtures above land**

The owner of submerged land, like the owner of dry land, owns also to the sky and to the depths. Therefore, the owners of submerged land had the right to proscribe permanent fixtures lying above such land and were entitled to enjoy the waters above such land free of defendants' boathouses.

**4. Appeal and Error § 68— prior judgment not law of the case**

In an action in which plaintiffs alleged that defendants were trespassing both by sinking anchors onto their submerged land and by floating boathouses on the waters above it, a partial summary judgment which granted a mandatory injunction ordering removal of the anchors and which denied summary judgment on the issue of damages and the Supreme Court decision which affirmed such judgment did not become the law of the case on the issue of injunctive relief as to the boathouses, and the superior court on remand properly ordered removal of the boathouses.

**5. Evidence § 56— rental value of submerged land—exclusion of testimony**

In an action to recover damages for trespass by sinking anchors into plaintiffs' submerged land and by floating boathouses on the waters above it, the trial court did not err in refusing to permit a realtor who had extensive experience appraising various types of property to state his opinion as to the rental value of plaintiffs' land where the witness admitted during voir dire examination that he had never appraised river bottom land, had never sold a boathouse or marina, was not familiar with the expense of operating a boathouse, and did not hold himself out as an expert in boathouse values or rentals, and where the witness by his own admission did not confine his appraisal to the plaintiffs' land on which defendants trespassed.

**6. Trespass § 8— trespass to submerged land—damages—erroneous instruction**

In an action to recover damages for trespass by sinking anchors into plaintiffs' submerged land and floating boathouses on the waters above it, plaintiffs were entitled to the fair rental value of their property during the period of the trespass regardless of operating losses shown by defendants, and the trial court thus erred in instructing that the jury could consider net operating losses of the boathouses in determining fair rental value.

APPEAL by defendants and cross-appeal by plaintiffs from *Gaines, Judge.* Judgment entered 30 January 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 11 March 1982.

*Fairley, Hamrick, Monteith & Cobb, by Laurence A. Cobb and F. Lane Williamson, for plaintiffs.*

*Harkey, Coira, Fletcher and Lambeth, by Henry Lee Harkey, Francis M. Fletcher, Jr., and Philip D. Lambeth, for defendants.*

WHICHARD, Judge.

On 21 April 1972 plaintiff, Steel Creek Development Corporation, filed this action in District Court, Mecklenburg County, asserting that defendants were trespassing on its submerged property located under Lake Wylie, a flooded portion of the Catawba River. The trespass alleged consisted of construction of certain floats and boat slips which were placed on the waters over plaintiff's land. Plaintiff sought an order directing defendants to remove the floats and slips, an injunction against further development on its property, and other relief deemed appropriate.

On 14 June 1972 the District Court declined to issue a temporary injunction directing defendants to remove the floats and slips pending trial. Defendants then filed an answer which, *inter alia*, denied the trespass on plaintiff's land. As a further defense defendants contended (1) that the waters upon which they had erected the floats and slips were public waters, and (2) that plaintiff, through its president, R. S. Smith, knew of the plans for construction of the floats and slips, made no objection thereto, and should therefore be equitably estopped from complaining of defendants' actions.

On 10 June 1974 plaintiff was allowed to amend its complaint to allege that since institution of the suit, defendants had erected additional floats and slips from which they were deriving substantial rental income. Plaintiff prayed for judgment for the fair rental value of the submerged land for so long as it was occupied by defendants and for a permanent injunction ordering removal of the floats and slips. Defendants' answer admitted the completion of one set of boat slips, but denied that it had been affixed to plaintiff's submerged land.

After transfer of the action to Superior Court, plaintiff's motion to amend its complaint to add, as parties plaintiff, R. S. Smith and Evelyn L. Smith, to whom the corporate plaintiff had conveyed all its property upon dissolution, was allowed. Defendants answered the amended complaint asserting a new further answer, defense, and counterclaim, to wit, that plaintiffs had "pursued a course of conduct to bring about the financial ruin of the Defendants," thus allowing plaintiffs to be in a position to acquire defendants' property at great financial loss and detriment to

defendants. Defendants claimed loss of franchises and damage to their reputation, and sought $500,000 in damages. Plaintiffs moved to strike defendants' answer, asserting that defendants were entitled only to answer any new matter arising from the amendment to the complaint. This Court, in *Development Corp. v. James*, 35 N.C. App. 272, 241 S.E. 2d 122 (1978), held that the order granting defendants thirty days to file responsive pleadings to the amended complaint allowed them to respond "in any proper way they deem appropriate to the amended complaint." *Id.* at 273, 241 S.E. 2d at 123. Judge Britt dissented, but plaintiffs did not appeal. In reply to defendants' counterclaim, plaintiffs pled the three year statute of limitations.

At the conclusion of discovery, both parties moved for summary judgment. An affidavit filed by plaintiff R. S. Smith established that in 1930 plaintiffs had purchased the disputed land, subject to the right of Duke Power Company to back, pond, or raise the waters of the Catawba River; and that defendants had erected two boathouses, both of which were anchored on plaintiffs' land. Defendants submitted the affidavit of Earl Terry James, which did not deny plaintiffs' ownership of the land.

Judge Snepp determined there was no genuine issue as to any material fact except damages, and granted partial summary judgment for plaintiffs. He ordered defendants to remove the anchors on plaintiffs' submerged land and permanently enjoined defendants from using the land in that manner.

This Court dismissed defendants' appeal from that judgment as interlocutory, but the Supreme Court granted defendants' petition for discretionary review. In *Development Corp. v. James*, 300 N.C. 631, 638, 268 S.E. 2d 205, 210 (1980), the Supreme Court held that plaintiffs had "established beyond genuine dispute that anchors connected to the boathouses built and launched by defendants in 1971 and 1972 trespass on submerged land owned by the plaintiffs." In reaching this conclusion, the Court relied heavily on an order of Judge Snepp finding that, since defendants failed to deny that part of plaintiffs' amended complaint alleging conveyance of the disputed land by the corporate plaintiff to the individual plaintiffs, that conveyance, and therefore plaintiffs' ownership, was deemed to be admitted. *Id.* After also determining that plaintiffs had shown defendants' evidence insufficient

with respect to one or more of the essential elements of defendants' estoppel defense, the Court affirmed the partial summary judgment and remanded for trial on the issue of damages.

Before trial plaintiffs filed a motion (1) alleging that (a) cables attaching the boathouses to the anchors continued to rest on their submerged land, and (b) the boathouses themselves were permanently affixed above said land, and (2) seeking an order directing defendants to remove the boathouses from above the submerged land. Defendants responded, contending that in his partial summary judgment Judge Snepp refused to hold that the boathouses floating above plaintiffs' submerged land constituted a trespass, and that they had fully complied with the injunctive order.

At trial plaintiffs offered evidence tending to show that the fair market rental value of their property for the period from 1 January 1972 until 31 December 1980, was $15,414.00. Defendants' evidence tended to show that the annual rental value of the property was $10.00.

The issues and answers were:

1. What amount of damages, if any, are the plaintiffs entitled to recover of the defendants by reason of a trespass occurring by the sinking of anchors on the plaintiffs' property?

ANSWER: $1.00

2. What amount of damages, if any, are the plaintiffs entitled to recover of the defendants by reason of a trespass occurring by the floating and maintaining of boathouses above plaintiffs' submerged land?

ANSWER: $100.00

The court ordered defendants to pay plaintiffs $101.00 and to remove the two boathouses from the surface of the water above plaintiffs' submerged land.

Defendants appeal, and plaintiffs cross-appeal.

DEFENDANTS' APPEAL

[1] The first issue presented is whether defendants trespassed when they floated two boathouses above plaintiffs' submerged land.

As part of this issue, defendants seek to relitigate a question which has been settled, to wit, whether the submerged land is owned by plaintiffs. Judge Snepp's partial summary judgment and the Supreme Court opinion in *Development Corp. v. James*, 300 N.C. 631, 268 S.E. 2d 205 (1980), established that plaintiffs owned the submerged land on which defendants at one time affixed their boathouses. That determination is the law of the case.

> "As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal."

*Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 239, 210 S.E. 2d 181, 183 (1974), *quoting* Parker, J., dissenting in part in *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E. 2d 298, 305 (1962). Hence, to the extent that defendants seek to relitigate the question of ownership of the submerged land, their assignment of error is overruled.

[2] Defendants also attempt to raise the ownership issue under this assignment of error by contending that the waters of Lake Wylie are navigable, and that the State therefore owns the land thereunder. If a body of water is navigable in fact, then it is navigable in law. The test is "the capability of being used for purposes of trade and travel in the usual and ordinary mode . . . and not the extent and manner of such use." *Taylor v. Paper Co.*, 262 N.C. 452, 456, 137 S.E. 2d 833, 836 (1964). *See also* G.S. 146-64(4); *Parmele v. Eaton*, 240 N.C. 539, 548, 83 S.E. 2d 93, 99 (1954).

The navigability issue appears to have been raised for the first time in this litigation on this appeal. The record reveals only that Lake Wylie is used for recreational boating, and that small seaplanes have occasionally landed on its surface. This evidence does not suffice to determine the capacity of the lake to support "trade and travel in the usual and ordinary mode." *Taylor, supra.* We are bound by, and may not indulge in speculation on matters *dehors*, the record. *Equipment Co. v. Hertz Corp. and Contrac-*

*tors, Inc. v. Hertz Corp.*, 256 N.C. 277, 285, 123 S.E. 2d 802, 808 (1962). We thus do not consider the navigability issue on this appeal.[1]

[3] The remaining question under this assignment of error is whether plaintiffs own the waters above their submerged land. While the presence of the water may be transitory, the owner of submerged land, like the owner of dry land, owns also to the sky and to the depths: *Cujus est solum, ejus est usque ad coelum et ad inferos.*[2] *See Ingold v. Assurance Co.*, 230 N.C. 142, 145, 52 S.E. 2d 366, 368 (1949); *Webster's Real Estate Law in North Carolina* § 7 (Hetrick Rev. 1981). The owner of submerged land thus has the right to proscribe permanent fixtures lying above such land. As owners of the submerged land, plaintiffs are entitled to enjoy the waters above such land free of defendants' boathouses. The determination that plaintiffs are so entitled was not error.

[4] The second issue presented is whether the partial summary judgment granted by Judge Snepp and affirmed by the Supreme Court was a final judgment, and is therefore *res judicata* on the issue of injunctive relief. Where, as here, the issue sought to be litigated was allegedly decided in an earlier appeal of the same case, the question is not whether the judgment is *res judicata*, but whether it has become the law of the case. *See Transportation, Inc. v. Strick Corp., supra.* In those terms, defendants assert that if Judge Snepp's judgment, which was affirmed by the Supreme Court, is the law of the case, Judge Gaines erred in allowing plaintiffs' motion for expanded injunctive relief and in ordering the removal of defendants' floats and slips from the waters over plaintiffs' submerged land.

---

1. Subsequent to oral argument counsel for defendants advised this court of the recent decision in *Hartman v. United States*, 522 F. Supp. 114, 117 (D.S.C. 1981). The United States District Court for the Rock Hill Division of South Carolina there found the waters of Lake Wylie to be navigable for purposes of determining admiralty jurisdiction. That decision does not bind this Court in determining the issue defendants attempt to present here, however; and absent record evidence, we are unable to make the determination requested.

2. An Irish lawyer named Sullivan once argued an air rights case before the highest court of Great Britain. A member of the court asked during oral argument: "Mr. Sullivan, have your clients not heard of the maxim, *cujus est solum, ejus est usque ad coelum et ad inferos*?" Sullivan responded: "My lords, the peasants of Northern Ireland speak of little else."

While there are cases granting the trial court authority to modify an injunction upon "a clear showing of changed conditions meriting relief," *McGuinn v. High Point*, 219 N.C. 56, 62, 13 S.E. 2d 48, 52 (1941); *see generally* Annot., 68 A.L.R. 1180 (1930); Annot., 136 A.L.R. 765 (1942), Judge Gaines' order did not modify the partial summary judgment granted by Judge Snepp, but instead granted injunctive relief where Judge Snepp's order was silent. In his partial summary judgment, Judge Snepp found there was no genuine issue as to any material fact except damages, and that plaintiffs were entitled to "injunctive relief requiring removal of the concrete anchors placed by defendants on the submerged land owned by the plaintiffs, the continuing use of which is a continuing trespass for which money damages are inadequate relief." The judgment found for plaintiffs on all the substantive, as opposed to the remedial, issues. Plaintiffs had alleged that defendants were trespassing both by sinking anchors onto their submerged land and by floating boathouses on the waters above it. Judge Snepp agreed. The partial summary judgment addressed two of the remedial issues through a mandatory injunction ordering removal of the anchors and a denial of summary judgment on the issue of damages. Judge Snepp did not rule on the question of injunctive relief as to the floats and slips, and the Supreme Court opinion thus did not address the question.

There is, then, no law of the case as to the issue of the injunctive relief ordered by Judge Gaines. Given our holding that plaintiffs have a right to have the waters above their submerged land free of permanent fixtures, Judge Gaines acted properly in ordering the removal of defendants' boathouses. Further, given the implicit findings by Judge Snepp as to the extent and continuing nature of defendants' trespass, mandatory injunction was the only adequate remedy available. We find no merit in defendants' contentions to the contrary.

### PLAINTIFFS' CROSS-APPEAL

[5] Plaintiffs assign error to the court's refusal to allow the opinion testimony of a realtor, with extensive experience appraising various types of property, as to the rental value of their land. A witness who has knowledge of value gained from experience, information, and observation, may generally give his opinion of the value of specific real property. *Highway Commission v. Conrad*,

263 N.C. 394, 399, 139 S.E. 2d 553, 557 (1965); 1 *Stansbury's North Carolina Evidence* § 128 (Brandis Rev. 1973). Here, however, the witness admitted during *voir dire* examination that he had never appraised river bottom land, had never sold a boathouse or marina, was not familiar with the expense of operating a boathouse, and did not hold himself out as an expert in boathouse values or rentals. Further, in arriving at the rental value opinion plaintiffs sought to introduce, the witness by his own admission did not confine his appraisal to the plaintiffs' land on which defendants trespassed. In view of these facts, it was not error to exclude the proffered testimony.

[6] Plaintiffs also contend the court erred (1) *in its instruction that the jury could consider net operating losses of the boathouses in determining fair rental value, and* (2) *in its refusal to instruct on damages as plaintiffs had requested.* The instruction plaintiffs requested was:

> The measure of damages . . . is the rental value of the land during the period of the trespass, in addition to any other distinct damage done.

> In determining the rental value of the land during the period of the defendants' trespass, . . . you may estimate the rental value by determining the actual rents defendants obtain from the use of the land, but the recovery by the plaintiffs is not limited to the value received by the defendants, and the defendants are liable for the actual rental value of the land and not what the defendants actually gathered from the land.

One measure for recovery of rental value after a trespass is "the completely objectified one for the rental value of the land during the dispossession." D. Dobbs, *Remedies* § 5.8, p. 366 (1973). An alternative, more subjective measure "allows recovery of whatever rents or profits were actually received by the trespasser from the use of the land, subject, perhaps, to deductions for certain expenses." *Id.* This measure is usually optional and is used only when the rent actually received exceeds the objective rental value measure. *Id.*

North Carolina appears to allow recovery of the fair rental value unless actual rent is greater. In *Credle v. Ayers*, 126 N.C.

11, 35 S.E. 128 (1900), an action for ejectment with claims for mesne profits, the Supreme Court affirmed a determination of damages as the actual rental value of the land rather than the lower figure which defendant in fact collected. The implicit rationale was that the trespasser should not benefit from his "want of good husbandry [which] materially lessened the productiveness of the land." *Id.* at 16, 35 S.E. at 129. *See also* Dobbs, *Trespass to Land in North Carolina Part II. Remedies for Trespass,* 47 N.C.L. Rev. 334, 341-43 (1969); *cf. Seligson v. Klyman,* 227 N.C. 347, 42 S.E. 2d 220 (1947).

Hence, plaintiffs were entitled to the fair rental value of the property regardless of the operating losses shown by defendants. The charge on this issue was incorrect and was prejudicial to plaintiffs; and plaintiffs are therefore entitled to a new trial on the issue of damages.

RESULT

In defendants' appeal, no error.

In plaintiffs' cross-appeal, new trial.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.