DOUGLAS BISHOP, AND WIFE PEGGY BISHOP v. MARIE C. REINHOLD, IN-
DIVIDUALLY AND AS THE EXECUTRIX OF THE ESTATE OF ERNEST M. REINHOLD

No. 8228SC1353

(Filed 7 February 1984)

1. **Appeal and Error § 6.2; Limitation of Actions § 4.1; Trespass §§ 3, 8— statute**
   **of limitations concerning trespass to property—continuing trespass—no inter-**
   **locutory appeal—award of damages improper**

   In an action for trespass in which plaintiffs sought removal of a home par-
   tially built on their land, G.S. 1-52(3) operated to bar the recovery of money
   damages for any acts committed in the initial trespass of 1973 or acts which
   continued to cause the plaintiffs money damages up to the three years prior to
   the institution of the action. Even though defendant's trespass is considered a
   continuing trespass, the appeal was not interlocutory since damages were
   awarded for only past acts of trespass. However, the award of monetary
   damages by the jury here was improper since according to G.S. 1A-1, Rule
   9(g), each item of special damages must be averred, and the plaintiffs pled only
   "removal" of the house, and have, therefore, limited their choice of relief.

2. **Trespass § 8— damages for trespass on real property**

   A plaintiff in an appropriate case of trespass to real property may prove
   the value of his monetary loss through the use of the measure of the difference
   between the fair market value before and after the trespass or the rental
   value of the land actually occupied, plus the decrease in the rental value of the
   remainder of the land caused by the presence of the encroaching structure. In
   addition the injured plaintiff can compel the removal of obstructions placed on
   his property by a defendant.

3. **Trespass § 6— duty of trial judge and jury when boundary is in dispute**

   There was no merit to defendants' assignment of error that the trial court
   erred by refusing to determine as a matter of law the sufficiency of the begin-
   ning point in the plaintiffs' deed since it is the duty of the trial judge as a mat-
   ter of law to determine what the boundary is and it is the jury's duty to
   establish where the line is located on the ground. In this case, the judge was
   not called upon to proclaim any boundaries, and the real controversy arose
   over where the boundary was on the ground.

4. **Trespass § 7— sufficiency of evidence**

   There was no abuse of discretion by the trial judge on his denial of a new
   trial on either the first issue in which the jury found that the defendants had
   wrongfully trespassed upon the plaintiffs' land or on the second issue in which
   the jury found that the land in controversy was not conveyed by defendants to
   plaintiffs by reason of a mutual mistake of defendants and plaintiffs or by
   reason of mistake or inadvertence of the draftsman.

APPEAL by defendants from *Friday, Judge.* Judgment entered 7 July 1982 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 17 November 1983.

*Redmond, Stevens, Loftin & Currie by Gwynn C. Radeker for plaintiff appellees.*

*Adams, Hendon, Carson & Crow by George Ward Hendon for defendant appellants.*

BRASWELL, Judge.

In the construction of their new dwelling house the defendants Reinhold partially erected the house on the adjoining, unimproved, lot of the plaintiffs, the Bishops. In this action for trespass the Bishops sue for removal of the building. The jury by its verdict found that the defendants had committed a wrongful trespass, that the deed from the Reinholds to the Bishops did not contain a mutual mistake of the parties or a mistake or inadvertence of the draftsman as to the description of the lot, and did award the Bishops $3,250 in damages. The judgment decreed that the encroachment constituted a continuing trespass, that the $3,250 represented "damages for such wrongful trespass to the date of trial," and that jurisdiction was retained in the trial court for a future trial which would assess "rental value (or its equivalent)" from the date of the first trial to the date of the future, or second, trial, and that the future jury should "ascertain the reasonable cost of removing the structure" from the Bishops' premises. Defendants appeal.

Of the seven questions presented by the Reinholds in their brief, we find that two have merit. First, it was error for the trial court to fail to apply the three-year statute of limitations for a continuing trespass, G.S. 1-52(3), to the undisputed evidence, at the close of all the evidence. Second, it was error for the trial court to allow into evidence any testimony about the Bishop's travel expenses to attend court (or deposition hearing), and error to allow any evidence of the amount of the survey fees. No special damages were pled, nor was there any motion to amend the pleadings at the close of the evidence to conform to the evidence presented. For these errors which were prejudicial to a part of

the defendants' case, we grant a partial new trial, as further reflected.

To understand these assignments of error it is essential to review the factual history of the parties' dealings. Douglas Bishop was a Colonel in the U. S. Air Force and during the years in question was stationed in widely-scattered places. In early spring of 1972 the Bishops, then living in Texas, became interested in buying real property in western North Carolina. E. M. Reinhold, husband of codefendant Marie C. Reinhold, who had several lots for sale in their "Town Mountain Estates," made contact with the Bishops. [Mr. Reinhold died between the date of trial and before judgment was filed. His wife, the other defendant, became his executor, and by court order was made a party in the representative capacity for him.]

After viewing various lots the Bishops agreed to purchase a particular lot and signed a sales contract prepared by Mr. Reinhold. Later, Mr. Reinhold informed the Bishops that he and his wife had promised that particular lot to a relative, and stated that if the Bishops would agree to tear up the sales contract the Reinholds would instead sell to them a lot east of the Reinholds' residence, which lot the Bishops had seen during their trip to Buncombe County. The Bishops did agree, and a new sales contract was signed on 7 July 1972. The defendants Reinhold caused a deed to be prepared dated 7 July 1972 and recorded in Book 1065 at Page 85.

In September of 1973 Colonel Bishop returned to the Town Mountain Estates. He noticed many changes in the area surrounding his lot. A swimming pool had been constructed to the left side of his lot upon the Reinholds' old residence lot. Adjoining the right side of his lot Colonel Bishop saw that a new dwelling house had been built, which by conversation he discovered to be the new residence of the defendants Reinhold. [They had built and moved from the left to the right of the plaintiffs.]

In 1978 the Bishops decided to sell their lot in Town Mountain Estates. Through a local realtor a potential buyer was located. To satisfy the requirements of the new buyer the Bishops had the lot surveyed. In May 1980 the surveyor completed his work, tendered the plat, and billed the Bishops $400 which was paid. The sale fell through upon the discovery by survey that the

Reinholds' new home had been partially built on the Bishops' lot. Damages resulting from the Bishops' present inability to sell the lot as well as their travel expenses for two trips from Hawaii, the place where plaintiffs were living when the lawsuit was filed on 11 September 1980, were allowed into evidence.

While testifying Colonel Bishop stated that during his 1978 visit to the lot that "[i]t had not changed any from what I remembered it when I was there in '73, so it was still basically the same." George Keller, a neighbor who owned a lot on the south of plaintiffs' lot and across the street, testified that he realized in 1973 when construction began that the Reinholds were building on the plaintiffs' lot. Keller stated, "just by eye or even by tape it was easy to ascertain that Mr. Reinhold was building" on the plaintiffs' land, but the Reinholds continued to build. As to why he did not do something about it earlier, Colonel Bishop replied, "I first did something about it when I first realized that there was an encroachment on my property when the Anders survey [May 1980] revealed the encroachment." Colonel Bishop did not object in 1972-73 because: "[W]hy should I object? At that time when [Mr. Reinhold] told me that's where [the line] was located, I had no reason not to believe it."

A continuing trespass is a peculiar animal in the law. The difficulty arises as to whether a plaintiff may maintain successive actions, as the physical trespass continues, which will subject a defendant to multiple suits, or whether he must recover all damages, past, present, and future, in a single action. This determination naturally controls the running of the statute of limitations. W. Prosser, Handbook of the Law of Torts § 13 (4th ed. 1971). Ordinarily, each day the trespass continues a new wrong is committed, which in turn bears a new statute of limitations.

[1]   At the outset the question has been raised as to whether this appeal is interlocutory. We answer no, because any appeal in a continuing trespass case that has awarded damages for only past acts of trespass is final as to the subject covered, while damages awarded at any subsequent trial, although stemming from the same continuing trespass, are based on further or continuing wrong as the encroachment remains. However, "in order to avoid a multiplicity of actions at law for damages," it lies within the province of the trial judge in a continuing trespass case to grant

"equitable relief in the form of a permanent injunction" as a proper remedy. *Conrad v. Jones*, 31 N.C. App. 75, 78, 228 S.E. 2d 618, 619 (1976).

In the case of an actual encroachment, such as a building on another's land, North Carolina, in accord with the majority view, holds that a plaintiff is limited to a single recovery of all damages. *Prosser, supra. See also Cherry v. Canal Co.*, 140 N.C. 422, 53 S.E. 138 (1906). *But compare Phillips v. Chesson*, 231 N.C. 566, 58 S.E. 2d 343 (1950). The complaint here is in accord with this view as factually it seeks only the removal of the building itself from the lot. While the prayer for relief does mention damages—"such damages as Plaintiffs may be entitled"—"[t]he nature of plaintiff's action and the relief to which plaintiff is entitled are to be determined by the facts alleged in the complaint and established by the evidence, and not the prayer for relief." 10 Strong, N.C. Index 3d, *Pleadings*, § 7 (1977). In *Lightner v. Raleigh*, 206 N.C. 496, 174 S.E. 272 (1934), the Supreme Court stated that whether a trespass was continuing or recurring depended on whether the damages could be ascertained and recovered in a single action. If the damages cannot be ascertained all at once, then successive actions may be brought to recover damages as they accrue. Here, the defendants' house has been located on the Bishops' lot for seven years and we can see no reason why all relief cannot be granted in this one action, and in one trial, as the rule indicates.

In a factually similar continuing trespass case, *Terry v. Jim Walter Corp.*, 8 N.C. App. 637, 175 S.E. 2d 354 (1970), a house was wrongfully constructed on the plaintiffs' land by the defendant. Although the defendant's appeal was based on the measure of damages used in the judge's instructions to the jury, the court added that "since the defendant is not a public authority or clothed with any right of eminent domain, the plaintiffs, as the landowners, could elect either to keep the house on their lot or demand that the defendant remove it and seek damages for the wrongful trespass." *Id.* at 642, 175 S.E. 2d at 357. The *Terry* court also seems to suggest that all damages must be recovered in one action. We hold, therefore, that the Bishops having chosen to sue for the removal of the house should not be allowed to maintain successive actions.

We now turn to a closer look at the statute of limitations (G.S. 1-52(3)). It provides that an action must be brought within three years.

> For trespass upon real property. When the trespass is a continuing one, the action shall be commenced within three years from the original trespass, and not thereafter.

In construing this statute our Supreme Court said in *Sample v. Lumber Co.*, 150 N.C. 161, 165-66, 63 S.E. 731, 732 (1909):

> True, the statute declares that actions for trespass on real estate shall be barred in three years, and when the trespass is a continuing one such actions shall be commenced within three years from the original trespass and not thereafter; but this term, "continuing trespass," was no doubt used in reference to wrongful trespass upon real property, caused by structures permanent in their nature and made by companies in the exercise of some *quasi*-public franchise. Apart from this, the term could only refer to cases where a wrongful act, being entire and complete, causes continuing damage, and was never intended to apply when every successive act amounted to a distinct and separate renewal of the wrong.

*See Teeter v. Telegraph Co.*, 172 N.C. 784, 90 S.E. 941 (1916). The wrongful maintenance of a portion of the defendants' dwelling house on the plaintiffs' lot is a separate and independent trespass each day it so remains and the three-year statute for removal begins to run each day the encroaching structure remains upon the plaintiffs' land. Any action to remove the encroachment, as in an action for compensation for the easement, or for the fee by adverse possession would not be barred until defendants had been in continuous use thereof for a period of twenty years so as to acquire the right by prescription. *See Love v. Telegraph Co.*, 221 N.C. 469, 20 S.E. 2d 337 (1942). To deny plaintiffs a right of action on 11 September 1980, when the complaint was filed, would be to allow the defendants a right of eminent domain as private persons (and without the payment of just compensation) or grant defendants a permanent prescriptive easement to use the plaintiffs' land. This the law will not do, as the defendants have not been in possession for 20 years from 1973, the date the house was constructed. Similar rationales have been applied to nuisances

and to renewing trespasses.[1] *Anderson v. Waynesville*, 203 N.C. 37, 164 S.E. 583 (1932).

We hold, therefore, that G.S. 1-52(3) operates in the present case to bar the recovery of money damages for any acts committed in the initial trespass of 1973, or which acts continued to cause the plaintiffs money damages up to three years prior to the institution of this action. Thus, the cut-off date is 11 September 1977. There are no allegations in the complaint for increased damages since 1977 from the continuing trespass. No special damages, such as survey fees, since 1977 are alleged. According to G.S. 1A-1, Rule 9(g) of the Rules of Civil Procedure, each item of special damages must be averred. Also, the underlying facts must be alleged so as to inform the defendant of the nature of the damages sought. *Stanford v. Owens*, 46 N.C. App. 388, 265 S.E. 2d 617, *disc. rev. denied*, 301 N.C. 95 (1980). The only claim for relief not barred here is for the actual removal of that part of the house which remains constructed upon the plaintiffs' lot. The award of monetary damages by the jury here was improper. While the evidence shows that the plaintiffs lost a sale of the lot in 1980, and although evidence of the difference in market value of the lot before and after the lost sale would be admissible in some proper case where it arose on the pleadings, for lack of a proper pleading of this item as damages, the plaintiffs here may not use it as their measure of damages. These plaintiffs chose only "removal" and have, therefore, limited their choice of relief. The trial court improperly admitted evidence of travel expenses and survey fees and wrongly allowed them to be recovered.

The defendants also assigned as error the evidence which was admitted concerning the rental value of plaintiffs' lot. While in a proper case rental value as one of the measures of damages may be used, it is out of place in this case with "removal" of the

---

1. *Galloway v. Pace Oil Co.*, 62 N.C. App. 213, 302 S.E. 2d 472 (1983), is a comprehensive opinion analyzing G.S. 1-52(3) and continuing trespasses in the nature of the ponding of water. Because there is a distinction between the defendant's wrong such as building a structure which impedes natural water drainage, and the actual trespass, such as the rainfall that has ponded, it is possible to avoid G.S. 1-52(3) by terming the trespass intermittent rather than continuing. In the present case, the defendant's wrong is the trespass which is clearly continuing. Therefore, *Galloway* is not cited as authority in this opinion nor the cases cited therein where the trespasses have been renewing, recurring, or intermittent in nature.

encroachment being the remedy chosen by the plaintiffs' complaint.

[2] What is the measure of damages for trespass on real property? In *Sanderlin v. Shaw*, 51 N.C. (6 Jones) 225, 229 (1858), the court held that "the plaintiff 'was entitled to recover damages for the loss he had sustained, if that loss was connected immediately with the act of the defendant.'" In *Smith v. VonCannon*, 283 N.C. 656, 660, 197 S.E. 2d 524, 528 (1973), it was said that a trespasser "would be liable for all damage proximately resulting from his wrongful entry and, at least, for nominal damages." In *Academy of Dance Arts v. Bates*, 1 N.C. App. 333, 336, 161 S.E. 2d 762, 764-65 (1968), our Court reviewed the principles of law in trespass cases. It cited *Lee v. Stewart*, 218 N.C. 287, 10 S.E. 2d 804 (1940), which said,

> "An invasion of the close of another . . . constitutes a trespass. * * * Where a trespass is shown the party aggrieved is entitled at least to nominal damages. * * *" In an action in trespass, "the defendant is liable for all damages which proximately resulted from his illegal act. In law he is required to contemplate all damages which proximately resulted from his wrongful act whether or not produced intentionally or through negligence. 'It is wholly immaterial whether the defendant in committing the trespass actually contemplated this, or any other species of damages, to the plaintiff.' *Johnson v. R.R.*, 140 N.C. 574."

Under these principles of damages, a plaintiff in an appropriate case of trespass may prove the value of his monetary loss through the use of the measure of the difference between the fair market value before and after the trespass (*see Hill v. Town of Hillsborough*, 48 N.C. App. 553, 559, 269 S.E. 2d 303, 306 (1980) ), or the rental value of the land actually occupied, plus the decrease in the rental value of the remainder of the land caused by the presence of the encroaching structure (*see Leigh v. Mfg. Co.*, 132 N.C. 167, 43 S.E. 632 (1903) ). In certain cases fair rental value may be received into evidence regardless of operating losses shown by the defendant. *See Development Corp. v. James*, 58 N.C. App. 506, 294 S.E. 2d 23, *disc. rev. denied*, 306 N.C. 740, 295 S.E. 2d 763 (1982). In addition the injured plaintiff can compel the removal of obstructions placed on his property by a defend-

ant. *See Academy of Dance Arts v. Bates, supra,* at 339, 161 S.E. 2d at 766: "all dirt, stones, concrete slabs, tree trunks."

[3] The defendants' assignment of error that the trial court erred by refusing to determine as a matter of law the sufficiency of the beginning point in the plaintiffs' deed is without merit. When a boundary is in dispute, it is the duty of the trial judge as a matter of law to determine what the boundary is and it is the jury's duty to establish where the line is located on the ground. *Combs v. Woodie,* 53 N.C. App. 789, 281 S.E. 2d 705 (1981).

In the present case neither party disputes the validity of the plaintiffs' deed (furnished by defendants) as describing a certain piece of land by metes and bounds. Even the counterclaim asked only for reformation, alleging a mutual mistake of the parties or inadvertence or mistake in the draftsman, and states: "[T]he Defendants conveyed real property to the Plaintiffs in error and which lay farther east of the property intended to be conveyed." Thus, the judge was not called upon in this case to proclaim any boundaries.

The real controversy arises over where this boundary is on the ground, what method the jury should use in locating the boundary, and if the plaintiffs' property has been encroached upon by the defendants' house. The plaintiffs' witness, Ray Anders, a registered land surveyor, stated that because the deed's beginning point was indeterminable he had to use other calls in the description to establish a beginning point in order to survey the property. E. M. Reinhold, on the other hand, testified that the beginning call could be ascertained and stated where he said it was located on the property.

The beginning point in the description in the plaintiffs' deed reads:

> BEGINNING on a stake in the center of Sunrise Summit Drive (also known as "B" Drive), at the Southeast corner of the property where E. M. Reinhold now resides . . . .

When he was cross-examined about the beginning point, Mr. Anders, the surveyor, explained:

> I saw that there in the deed before I even started doing any surveying. It's true that I testified earlier that "I tried to

place the beginning point. It would have been in an entirely different place, because I didn't know where he now resides." . . . So then I went on to look for the other monument, the CATV corner and the Keller corner.

Also, Mr. Anders continued to testify without objection and explained that when he first went to the area of the property he "didn't know where Sunrise Summit Drive was," and found out by making inquiries, that he had a conversation with Mr. Reinhold to help him determine where Mr. Reinhold lived as of the date of the deed, and that he looked at a map brought out by Mr. Reinhold. When counsel next sought to pinpoint the southeast corner of the Reinhold residence lot as of 1972 in accordance with the defendants' theory of location, the surveyor replied, "I didn't rightfully know that that was the southeast corner."

Mr. Anders further pointed out that "there was really no stake here," referring to defendant's contention of "a stake in the center of Sunrise Summit Drive." However, he did find an offset iron and a concrete monument as otherwise indicated on the plat being shown to him. Finally, Mr. Anders testified:

> I ignored that as the beginning corner of the Bishop property because I felt in my mind that that was not certain enough to be a corner; so I went and used the CATV corner and the Keller corner and backed into a beginning point.
>
> . . . If I had this description in the sales agreement to go by and I didn't have the deed from Reinhold to Bishop to go by, I could not locate that property. . . .

We would also point out that from a survey made by defendants the new house was not located upon the Bishop lot. On Mr. Anders' survey, a portion of the new house was upon the Bishop lot. There is a 50-foot difference in the two surveys. The 50-foot strip lies to the western side of the Bishop lot. Since the Reinholds owned all of the land at an earlier time, and since the 50-foot section adjoins the 1972 residence of the Reinholds, it would appear from this record that the 50-foot section still is owned by the defendants Reinhold. As indicated in *Cutts v. Casey*, 271 N.C. 165, 168, 155 S.E. 2d 519, 521 (1967), *remanded on other grounds*, 278 N.C. 390, 180 S.E. 2d 297 (1971), *quoting Batson v. Bell*, 249 N.C. 718, 719, 107 S.E. 2d 562, 563 (1959):

"If a particular corner is unknown and cannot be determined by adhering to the directions in the sequence specified, it is permissible to go to a subsequent known or established corner and by reversing the direction fix the location of the unknown corner. This backtracking is permissible only because it permits the location of an otherwise unknown corner."

[4]　In addition, we see no error in the trial court's denial of the defendants' motion for a judgment notwithstanding the verdict or denial of the motion for a new trial as to the first and second issues. By its answer to the first issue the jury found that the defendants had wrongfully trespassed upon the plaintiffs' land. By its answer to the second issue the jury found that the land in controversy was not conveyed by defendants to plaintiffs by reason of a mutual mistake of defendants and plaintiffs or by reason of mistake or inadvertence of the draftsman.

The standard of review for determining the appropriateness for granting a judgment notwithstanding the verdict is the same standard applicable to a motion for a directed verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974). We hold from the evidence that the plaintiffs did present a prima facie case of trespass on which the jury was properly allowed to pass and which would support a verdict for plaintiffs on the first issue. The second issue, on mistake or inadvertence, arose from the counterclaim. The evidence presented a question for the jury, and the jury, within its sole province, decided the facts against the defendants. The evidence was sufficient to support the result.

The decision on whether to grant a new trial on the issues rested in the sound discretion of the trial judge. *Sizemore v. Raxter*, 58 N.C. App. 236, 293 S.E. 2d 294, *disc. rev. denied*, 306 N.C. 744, 295 S.E. 2d 480 (1982). We hold that the record discloses no abuse of discretion by the trial judge on his denial of a new trial on either the first or second issue, and his ruling is upheld.

We have examined all the other assignments of error and find no error in any of them.

The third, and last, issue submitted was the damage issue. As shown above, in this case it was error to allow monetary damages. Ordinarily, any error in the damage issue would warrant a new trial on damages. However, since the plaintiffs are not en-

titled in law on these facts to money damages, and are entitled to a removal of the structure that encroaches upon their lot, the jury having found there was a trespass, the plaintiffs are entitled to a mandatory injunction requiring a removal of the encroachment (*see O'Neal v. Rollinson*, 212 N.C. 83, 192 S.E. 688 (1937)), which injunction will be enforced under the contempt powers of the court. No new trial, as that term is usually used, is required. Based upon the jury's verdict to the first issue of trespass the case is now remanded to the Superior Court of Buncombe County to issue a new judgment which shall strike the award of monetary damages, and which shall grant a mandatory injunction of removal of all that part of the defendants' dwelling house that sits upon the plaintiffs' land as shown in the evidence by the plat of the Anders' survey. The removal shall be at the sole expense of the defendants.

Modified in part, affirmed in part, and remanded for new judgment in accordance with this opinion.

Judges ARNOLD and HILL concur.