**STATE OF ALASKA,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America, et al.,**
**Defendant-Appellees.**

No. 84–3625.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 17, 1985.

Decided Feb. 28, 1985.

As Corrected May 3, 1985.

Kenneth C. Powers, Asst. Atty. Gen., Anchorage, Alaska, for plaintiff-appellant.

Blake A. Watson, Department of Justice, Washington, D.C., for United States of America.

Robert H. Hume, Jr., Keane, Harper, Pearlman & Copeland, Anchorage, Alaska, for Iliamna Natives Ltd.

Frederick H. Boness, Preston, Thorgrimson, Ellis & Holman, Anchorage, Alaska, for Bristol Bay Native Corporation.

James Wickwire, David C. Crosby, Wickwire, Lewis, Goldmark & Schorr, Seattle, Wash., for amicus curiae Artic Slope Regional Corporation.

Richard M. Frank, Deputy Atty. Gen., Sacramento, Cal., for amicus curiae State of Cal.

Before WRIGHT and TANG, Circuit Judges, and THOMPSON,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

This dispute over ownership of the bed of Slopbucket Lake raises an issue of first impression: whether floatplane use renders a small Alaska lake navigable for purposes of title under the "equal footing" doctrine. Our resolution of this issue potentially affects ownership of thousands of acres underlying small lakes throughout Alaska.

## FACTS

Slopbucket Lake is a small lake (approximately 20 acres)[1] in South Central Alaska, just north of Lake Iliamna, a much larger navigable body of water. Slopbucket, which was once a part of Iliamna, is now separated from the larger lake by a natural sand beach between 75 and 100 feet wide, and about four feet high. It is used extensively as a landing and takeoff spot for floatplanes, because of frequent high winds and rough waters on Lake Iliamna.

*Procedural History*

On January 23, 1980, the Alaska State Office of the United States Department of the Interior, Bureau of Land management (BLM), determined that the bed of Slopbucket Lake was federally owned "public land" available for conveyance to defendants Iliamna Natives Limited and Bristol Bay Native Corporation (BBNC), pursuant to the Alaska Native Claims Settlement Act (ANCSA). 43 U.S.C. §§ 1601–1628.[2]

In April 1981, the state initiated this quiet title action, alleging that use of Slopbucket Lake by floatplanes and related watercraft rendered the lake navigable for title purposes.

---

* Senior Judge of the District of Nevada.

1. There is some dispute over its exact size, with estimates ranging from 20 to 80 acres. The name "Slopbucket" was coined by previous Fish and Wildlife Service employees. Evidently, they lived in a cabin on the spit between Lakes Iliamna and Slopbucket, and would draw drinking water from Iliamna, then dump their slopbuckets on the other side of the spit. Lake Iliamna is the largest lake in Alaska, encompassing 1,150 square miles.

2. Pursuant to 43 C.F.R. 2650.5–1(b) (1983), the BLM is charged with determining whether bodies of water located within native land selections made under ANCSA are navigable. Under BLM departmental policy, floatplane use is not considered a customary mode of travel upon water for purposes of title navigability. *See* Memorandum issued in 1976 by Hugh C. Garner, Associate Solicitor, BLM, Division of Energy and Resources. Excerpt of Record (E/R), Vol. III, pp. 456–471.

Effective December 5, 1983, all Alaska lakes over 50 acres in size are meandered in accordance with BLM, *Manual of Surveying Instructions,* (1973), and "Alaska Native corporations organized pursuant to [ANCSA] ... shall not be charged for submerged lands beneath water bodies ... meandered...." BLM, *Interim Waiver of Regulations and Establishment of Policy,* 48 Fed.Reg. 54, 483 (1983).

Alaska moved for summary judgment on the ground that there was no genuine issue as to any material fact concerning (1) the extensive commercial use of Slopbucket Lake by floatplanes, both presently and at the time of statehood and (2) the fact that floatplanes constituted a customary mode of trade and travel on water at the time of statehood.

The federal defendants moved for partial summary judgment on the "ground that, as a matter of law, aircraft use does not render a water body navigable for purposes of determining ownership of the bed." Federal Defendants' Motion for Partial Summary Judgment. The district court denied the State's summary judgment motion and granted the defendants'. The court held that "... floatplane activities on Slopbucket Lake are not modes of conducting commerce on water for the purpose of determining navigability for title. Such activities are legally irrelevant to the navigability determination." *Alaska v. United States,* 563 F.Supp. 1223, 1228 (D.Alaska 1983).

The State moved unsuccessfully for an amendment to the district court's order permitting an interlocutory appeal under 28 U.S.C. § 1292(b). The State then waived any claim to the "navigability of Slopbucket Lake independent of the activities of floatplanes." Alaska's Motion to Vacate Trial. The motion was granted and judgment entered in favor of all defendants. Alaska appealed.

## ANALYSIS

### Standard of Review

▮▮▮ An appeal from an order granting or denying a summary judgment is reviewed de novo. *Philpott v. A.H. Robins Co.,* 710 F.2d 1422, 1423 (9th Cir.1983). All "evidence and factual inferences" must be viewed in the light most favorable to the adverse party and the summary judgment may be upheld only if "there are no genuine issues of material fact and [the movant is] entitled to judgment as a matter of law." *Martino v. Santa Clara Valley Water Dist.,* 703 F.2d 1141, 1145 (9th Cir.), cert. denied, —— U.S. ——, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983).

### Navigability

▮▮▮ Under the "equal footing doctrine," the federal government holds title to the beds of navigable waterways "in trust for future States, to be granted to such States when they enter the Union and assume sovereignty on an 'equal footing' with the established States." *Montana v. United States,* 450 U.S. 544, 551, 101 S.Ct. 1245, 1251, 67 L.Ed.2d 493 (1981).[3] Whether a particular body of water is navigable for purposes of title is a question of federal law. *Utah v. United States,* 403 U.S. 9, 10, 91 S.Ct. 1775, 1776, 29 L.Ed.2d 279 (1971).

The federal test for navigability was first articulated in *The Daniel Ball,* 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1871). The Court said:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.

▮▮▮ The issue in *Daniel Ball* was admiralty jurisdiction but the Supreme Court has adopted the same test for title purposes. *See, e.g., United States v. Utah,* 283 U.S. 64, 76, 51 S.Ct. 438, 441, 75 L.Ed. 844 (1931) (quoting *Daniel Ball* ), *Oregon v. Riverfront Protection Ass'n,* 672 F.2d 792, 794 (9th Cir.1982). Of course, we

---

**3.** The title is subject to Congress' paramount ʾpower over navigable waters under the Commerce Clause, and prior conveyances by Congress in certain limited circumstances not applicable here. *Montana,* 450 U.S. at 551–52, 101 S.Ct. at 1251–52. The Submerged Lands Act, 43 U.S.C. §§ 1301–1315, confirms the State's existing rights under the equal footing doctrine. *See*

*Bonelli Cattle Co. v. Arizona,* 414 U.S. 313, 324 n. 19, 94 S.Ct. 517, 525 n. 19, 38 L.Ed.2d 526 (1973), *overruled on other grounds, Oregon v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977). The doctrine itself is grounded in the Constitution. *See Pollard's Lessee v. Hagan,* 44 U.S. (3 How.) 212, 11 L.Ed. 565 (1845).

must consider the context in which a navigability determination is made before evaluating its precedential effect. *Kaiser Aetna v. United States,* 444 U.S. 164, 171, 100 S.Ct. 383, 388, 62 L.Ed.2d 332 (1979).

However, when the central issue is navigability, a case applying the *Daniel Ball* test provides guidance. For instance, in *Riverfront Protection Ass'n,* 672 F.2d at 795, we looked for guidance to *Puget Sound Power & Light Co. v. FERC,* 644 F.2d 785, 788–89 (9th Cir.), cert. denied, 454 U.S. 1053, 102 S.Ct. 596, 70 L.Ed.2d 588 (1981), although in *Puget Sound* we were determining navigability for Commerce Clause purposes. However, we did so only after considering the difference between title navigability and Commerce Clause analysis. *See Riverfront Protection Ass'n,* 672 F.2d at 794 n. 1.

## A. The Mode of Transportation

Alaska argues that floatplane use was a "customary [mode] of trade and travel on water" at the time of statehood. *Daniel Ball,* 77 U.S. at 563. Alaska points to language in *The Montello,* 20 Wall. 430, 87 U.S. 430, 441–42, 22 L.Ed. 391 (1874), where the Supreme Court said a river was "navigable in fact ... [i]f it [is] capable in its natural state of being used for purposes of commerce, *no matter in what mode the commerce may be conducted ...*". (emphasis added). The State contends that since floatplanes are a mode of commerce that operates partially on water, their use necessarily renders Slopbucket lake navigable.

■ Alaska reads *The Montello* too broadly. There, the Court based navigability on the use of shallow draft Durham boats propelled by animal power, and refused to limit navigability to waterways open only to steam or sail vessels. However, the crux of the test is still the requirement that the body of water be susceptible of use as a highway or channel for commerce on water. *Utah v. United States,* 403 U.S. at 11, 91 S.Ct. at 1777. This necessarily involves the utilization of

the waterway as a path between two points.

We recognize that navigability is a flexible concept and "[e]ach application of [the *Daniel Ball* test] ... is apt to uncover variations and refinements which require further elaboration." *United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 406, 61 S.Ct. 291, 298, 85 L.Ed. 243 (1940) (navigability test applied in commerce clause analysis). For this reason, we have liberally construed the phrase "customary modes of trade and travel on water," *Daniel Ball,* 77 U.S. at 563, taking into account transportation methods in use at the time of statehood. *See, e.g., Riverfront Protection Ass'n,* 672 F.2d at 795 (floating logs—title navigability); *Puget Sound Power & Light Co.,* 644 F.2d at 788–89 (floating of shingle bolts sufficient for navigability in context of federal regulatory jurisdiction). Nevertheless, the central theme remains the movement of people or goods from point to point on the water.

Alaska argues that Slopbucket Lake is an integral part of an air and water highway over which floatplanes travel throughout the Bristol Bay region of Alaska. However, in this context, the lake is a terminus or launching point for floatplanes, not "a *channel* for useful commerce." *United States v. Holt State Bank,* 270 U.S. 49, 56, 46 S.Ct. 197, 199, 70 L.Ed. 465 (1926) (emphasis added). The floatplanes go to and from the lake; they do not travel on the water.

*Prior Treatment of Floatplane Use*

### A. Case Law

The reported decisions mentioning floatplane use in the context of title navigability provide little guidance. In *Steel Creek Development Corp. v. James,* 58 N.C.App. 506, 294 S.E.2d 23, 27, rev. denied, 306 N.C. 740, 295 S.E.2d 763 (1982), the court in dictum dismissed evidence of floatplane use and recreational boating as insufficient to support a claim of navigability. In *Snively v. State,* 167 Wash. 385, 9 P.2d 773 (1932), the Washington Supreme Court squarely rejected the argument that the potential

use of Angle Lake[4] as a landing spot for floatplanes rendered the lake navigable.

The district court in *Minnehaha Creek Watershed Dist. v. Hoffman*, 449 F.Supp. 876, 880 (D.Minn.1978), *aff'd in part, rev'd in part*, 597 F.2d 617 (8th Cir.1979), mentioned floatplane use in an extensive laundry list of factors for determining jurisdiction under the Rivers and. Harbors Act of 1899 § 10, 33 U.S.C. § 403. However, the other factors were much more substantial and the Eighth Circuit omitted any reference to floatplanes in the appellate opinion.

### B. *Administrative Determination*

The BLM, pursuant to departmental policy, determined that Slopbucket Lake was not navigable.[5] In *United States v. Oregon*, 295 U.S. 1, at 23, 55 S.Ct. 610, 619, 79 L.Ed. 1267 (1935), the Court said it was "not without significance that the disputed area [had] been treated as nonnavigable both by the Secretary of the Interior and the Oregon courts."

Since we reach the same conclusion as did the BLM after *de novo* review, we need not decide whether or to what extent we should defer to the BLM's navigability determination when that determination is not before us for review.

CONCLUSION

■ For purposes of defendant's summary judgment motion, we assume that Slopbucket Lake was at the time of statehood and still is used extensively for takeoff and landing by floatplanes. Since "susceptibility ... rather than .. extent of actual use, is the crucial question", *United States v. Utah*, 283 U.S. at 82, 51 S.Ct. at

443, further evidence would not aid our inquiry.

We agree with the district court that use of Slopbucket Lake by floatplanes and is insufficient as a matter of law to render the lake navigable for purposes of title. Since Alaska waived all navigability claims independent of floatplanes, judgment for defendants was proper.

For the same reason, Alaska's summary judgment motion was properly denied.

AFFIRMED.

---

4. Angle Lake is a small resort lake, located on the flight path between the southern end of Lake Washington and Tacoma.

5. Alaska argues this is inconsistent with a BLM determination that Slopbucket Lake is a "major waterway" for purposes of 43 C.F.R. § 2650.-05(a) (1983), based on floatplane use. *See* BLM Memorandum dated May 20, 1982, E/R Vol. I., pp. 205–206. Section 2650.05(a) defines a "major waterway" to include a "lake which has significant use in its liquid state by watercraft for access to publicly owned lands or between

communities. Significant use means more than casual, sporadic or incidental use by watercraft including floatplanes...." The BLM navigability determination is not before us, so we need not consider whether it is inconsistent with the regulation. However, the designation of a waterway as major for purposes of easements is qualitatively different from a title navigability determination. *See Alaska Public Easement Defense Fund v. Andrus*, 435 F.Supp. 664, 678 (D.Alaska 1977).